IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PATRICIA LUPOLE, Administrator of the Estate of Gary Lupole, deceased,<br><br>　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)　Civil Action No. 7:17-cv-00355<br>)<br>)　By: Elizabeth K. Dillon<br>)　　United States District Judge<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

At the August 17, 2018 hearing in this matter, the court indicated that it would complete its review of the briefing and reach a decision soon on at least some of the issues raised by the parties in motions pending before the court. The court further indicated that it would advise the parties as to its decision as soon as possible, in part because the parties are in the midst of discovery and any decision resolving any claims might render some discovery unnecessary.

Having now completed its review, the court concludes that both of plaintiff's claims against the United States are barred by the Federal Tort Claims Act's two-year statute of limitations. Thus, dismissal of the claims against the United States is appropriate. The court explains its decision herein but does so in an abbreviated fashion, both because the parties are familiar with the facts and the issues and because the parties have asked for a decision as soon as possible. The court thus assumes the reader's familiarity with all the briefing in this case and dispenses with any lengthy discussion of the factual background, procedural history of the case, or standard of review.

Plaintiff Patricia Lupole is the administrator of the estate of her deceased husband. She alleges that her husband received negligent medical care from the Veterans Administration (VA) and from an independent contractor working there, defendant Dr. Hines. She further contends that the negligence resulted in a failure to timely diagnose Mr. Lupole's advanced liver cancer, which caused his death.[1]

As the parties agree, both claims against the United States—claims of medical malpractice and wrongful death—are governed by the statute of limitations under the Federal Tort Claims Act, which requires that an administrative claim be filed within two years of its accrual. 28 U.S.C. §2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). They also agree that the general rule in medical malpractice cases under the FTCA is that the cause of action accrues when "the plaintiff has discovered both his injury and its cause." *United States v. Kubrick*, 444 U.S. 111, 120 (1979). That is, "[w]hen the facts of a case become so grave as to alert a reasonable person that there may have been negligence in a patient's treatment, the statute of limitations begins to run." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 746 (4th Cir. 1990) (en banc); *see also Miller v. United States*, 932 F.2d 301, 304 (4th Cir. 1991) (explaining that under the intersection of the FTCA and Virginia law, a wrongful death claim accrues when a claimant "first knows of an injury and its cause"; the claimant need not know that he had an injury that would eventually cause his death).

The court concludes that Mr. Lupole's claim accrued on December 23, 2011, based on the administrative claim, the complaint, and Mrs. Lupole's deposition testimony. On that date, "an MRI confirmed the diagnosis of LIVER CANCER" (Admin. claim Dkt. 1-2, p. 4) and VA Nurse Practitioner and Registered Nurse Ruth Davis told the Lupoles that if Mr. Lupole had been

---

[1] There is some dispute over the cause of Mr. Lupole's death, but it is not material to the limitations issue.

attending the clinic where she worked,[2] "she would not have to be giving Mr. Lupole a diagnosis of terminal cancer" (Compl. ¶ 57, Dkt. No. 1). Thus, the Lupoles knew on December 23, 2011, both about the alleged missed diagnosis and the resulting injury of terminal cancer, which was sufficiently grave to alert the Lupoles that there may have been negligence. Because the administrative claim in this case was not filed until January 31, 2014, more than two years later, plaintiff's claims are time-barred.

Plaintiff argues, though, that the "continuing treatment" doctrine applies here, thereby rendering the claim timely. *Cf. Otto v. Nat'l Inst. of Health*, 815 F.2d 985 (4th Cir. 1987) (adopting the doctrine). As explained in *Otto*, the doctrine provides that, "where there has been a course of continuous medical treatment, a claim may not accrue until the end of that course of treatment, if the treatment has been for the same illness or injury out of which the claim for medical malpractice arose." 815 F.2d at 988. The "doctrine is based on a patient's right to place trust and confidence in his physician" and excuses the patient "from challenging the quality of care being rendered until the confidential relationship terminates." *Id.* It thus "permits a wronged patient to benefit from his physician's corrective efforts without the disruption of a medical malpractice action." *Id.*

The court concludes, however, that the doctrine is inapplicable on the facts here. Instead, the case at bar is governed by the reasoning and result in *Miller*, 932 F.2d 301, in which the plaintiff also alleged a failure to screen and detect cancer. The plaintiff in *Miller* claimed that a doctor negligently failed to order a mammogram for the patient, given her history, and she subsequently developed breast cancer that caused her death. The plaintiff argued that the continuous treatment theory should apply because the patient continued to receive treatment,

---

[2] Davis worked from September 2001 to July 2016, at the VAMC gastroenterology clinic as the Hepatitis C Coordinator, Liver Transplant Coordinator, and GI Nurse practitioner. (Davis Decl. ¶ 1, Dkt. No. 32-1.)

3

including treatment for cancer, from other doctors at the facility and those doctors had "negligently treated her in a variety of ways." *Id.* at 304. The Fourth Circuit rejected that argument. It first noted that her theory of negligence had not been premised on any later negligence, and, in any event, no later negligence could have contributed to the specific cause of death on which the wrongful death claim rested: "the failure to detect cancer in time to arrest it and thereby altogether avoid death from that cause." *Id.* at 305. It also reasoned that "the rationale for [the continuous treatment] tolling theory only permits its application when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction." *Id.* The *Miller* court thus concluded that the doctrine was inapplicable. *Id.* at 106.

The same is true here. First, the care provided by other specialists at other VA facilities after January 31, 2012, was not provided by "other doctors acting under" the direction of any doctor or other health care provider that the plaintiff is accusing of negligence, including Mr. Lupole's primary care provider, Dr. Dunne, as in *Otto*. While plaintiff emphasizes that Dr. Dunne remained her husband's primary care physician and was responsible for his care through February 1, 2012, that is irrelevant to the inquiry. Under the plain meaning of the word, Dr. Dunne was not "directing" the care provided by other VA physicians. Moreover, neither he nor Nurse Practitioner Davis provided any treatment on January 31, 2012, or later. Nor was any treatment for failure to diagnose provided on January 31, 2012, or later; thus, there was no treatment for "the same problem," as is required by *Miller*. *See id.* at 305.

The court disagrees with plaintiff's argument that *Otto* dictates that the doctrine should apply here. The facts here are a far cry from *Otto* where there was a botched surgery and additional treatment offered in an attempt to remedy the effects of the negligence in surgery. Not

4

only did the *Otto* court describe the facts before it as "somewhat unique," 815 F.2d at 988, but the doctors providing care after the initial injury continued to advise plaintiff that there were options available to her to correct the problems such that the risk of permanent injury was "virtually nonexistent," *id.* at 989. Thus, she did not learn, until within two years of her claim, that nothing more could be done for her. *Id.*

This case is unlike *Otto* and is controlled instead by *Miller*. Here, the failure to diagnose was an injury in and of itself, and no treatment was received for that injury within two years of the filing of the administrative claim. The court also notes that this is consistent with rulings by other district courts in the Fourth Circuit, in which courts have refused to apply the continuing treatment doctrine on similar facts. *See, e.g.*, *Cole v. Pincipi*, 2004 WL 878259, at *5–6 (M.D.N.C. Apr. 4, 2004) (holding that the continuing treatment doctrine was inapplicable where alleged negligence during ear surgery resulted in nerve damage and permanent hearing loss and the plaintiff thereafter received treatment in the form of ear exams and tests for hearing aids by the same doctors; the treatment was not "corrective efforts" as in *Otto*, but "merely efforts to help Plaintiff cope with the permanent injury"). For all of these reasons, the court concludes that the continuing treatment doctrine does not apply.

The court recognizes that, to the extent Mr. Lupole has a meritorious claim or claims against the United States, application of the statute of limitations works a harsh result. But as the Supreme Court and the Fourth Circuit have both recognized, "statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." *Gould*, 905 F.2d at 747 (quoting *United States v. Kubrick*, 444 U.S. 11, 125 (1979)). Statutes of limitations nonetheless "serve important, well-established purposes," and this court is "bound to give them effect until

such time as the creator of such provisions, the legislative branch, exercises its prerogative to amend the statute." *Id.*

For these reasons, the court GRANTS the United States's motions (Dkt. Nos. 31, 49) only insofar as they argue that the statute of limitations bars plaintiff's claims. Any other relief requested in all other pending motions (Dkt. Nos. 31, 49, 62) is DENIED AS MOOT.

This ruling does not affect in any way plaintiff's claims against Dr. Hines.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

Entered: August 22, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge