IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PATRICIA LUPOLE, Administrator of the Estate of Gary Lupole, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 7:17-cv-00355 ) ) By: Elizabeth K. Dillon |
| UNITED STATES OF AMERICA, *et al.*, | ) United States District Judge ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patricia Lupole is the administrator of the estate of her deceased husband, Gary Lupole. She alleges that her husband received negligent medical care from the Veterans Administration (VA) and from an independent contractor working there. She further contends that the negligence resulted in a failure to timely diagnose Mr. Lupole's advanced liver cancer, which caused his death.[1] On August 22, 2018, the court granted the United States' motion to dismiss Lupole's claims as time-barred. (8/22/18 Mem. Op. & Order 6, Dkt. No. 81.) Lupole moves to reconsider that ruling. (Dkt. No. 82.) For the reasons stated below, this motion is denied.

In its prior Memorandum Opinion and Order, the court explained that Lupole's claims are governed by the statute of limitations under the Federal Tort Claims Act (FTCA), which requires that an administrative claim be filed within two years of its accrual. (8/22/18 Mem. Op. & Order 2 (citing 28 U.S.C. § 2401(b).) The court stated the general rule in FTCA medical malpractice cases, that the cause of action accrues when the plaintiff has discovered "both his injury and its cause," that is, "when the facts of a case become so grave as to alert a reasonable person that

---

[1] There is some dispute over the cause of Mr. Lupole's death, but it is not material to the limitations issue.

there may have been negligence in a patient's treatment." (*Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979) and *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 746 (4th Cir. 1990) (en banc)).)  Under this rule, the court concluded that Lupole's claim accrued on December 23, 2011, when an MRI confirmed the diagnosis of liver cancer, and a nurse practitioner told the Lupoles that if Mr. Lupole had been attending the clinic where she worked, "she would not have to be giving Mr. Lupole a diagnosis of terminal cancer." (*Id.* at 2–3.) "Because the administrative claim in this case was not filed until January 31, 2014, more than two years later, plaintiff's claims are time-barred." (*Id.* at 3.)  The court rejected Lupole's argument that the "continuing treatment" doctrine applied to render the claim timely. (*Id.* at 3–6 (citing and discussing *Otto v. Nat'l Inst. of Health*, 815 F.2d 985 (4th Cir. 1987)).)  Instead of *Otto*, the court explained that "the case at bar is governed by the reasoning and result" in *Miller v. United States*, 932 F.2d 301 (4th Cir. 1991). (*Id.* at 3.)

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  The Fourth Circuit has held that the discretion afforded by Rule 54(b) is "not limitless" and it has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Virginia, LLC*, 899 F.2d 236, 256–57 (4th Cir. 2018).  The discretion to revisit earlier rulings in the same case is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 257.

"Compared to motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Scientific Corp.*, 856 F. 3d 320, 325 (4th Cir. 2017). "[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of new evidence not available at trial." *Id.*

In its order, the court discussed and rejected the application of the continuing treatment doctrine:

> The court concludes, however, that the doctrine is inapplicable on the facts here. Instead, the case at bar is governed by the reasoning and result in *Miller*, 932 F.2d 301, in which the plaintiff also alleged a failure to screen and detect cancer. The plaintiff in *Miller* claimed that a doctor negligently failed to order a mammogram for the patient, given her history, and she subsequently developed breast cancer that caused her death. The plaintiff argued that the continuous treatment theory should apply because the patient continued to receive treatment, including treatment for cancer, from other doctors at the facility and those doctors had 'negligently treated her in a variety of ways.' *Id.* at 304. The Fourth Circuit rejected that argument. It first noted that her theory of negligence had not been premised on any later negligence, and, in any event, no later negligence could have contributed to the specific cause of death on which the wrongful death claim rested: 'the failure to detect cancer in time to arrest it and thereby altogether avoid death from that cause.' *Id.* at 305. It also reasoned that 'the rationale for [the continuous treatment] tolling theory only permits its application when the treatment at issue is for the same problem and by the same doctor, or that

> doctor's associates or other doctors operating under his direction.' *Id.* The *Miller* court thus concluded that the doctrine was inapplicable. *Id.* at 106.
>
> The same is true here. First, the care provided by other specialists at other VA facilities after January 31, 2012, was not provided by 'other doctors acting under' the direction of any doctor or other health care provided that the plaintiff is accusing of negligence, including Mr. Lupole's primary care provider, Dr. [Bernard] Dunne, as in *Otto*. While plaintiff emphasizes that Dr. Dunne remained her primary care physician and was responsible for his care through February 1, 2012, that is irrelevant to the inquiry. Under the plain meaning of the word, Dr. Dunne was not 'directing' the care provided by other VA physicians. Moreover, neither he nor Nurse Practitioner [Ruth A.] Davis provided any treatment on January 31, 2012, or later. Nor was any treatment for failure to diagnose provided on January 31, 2012, or later; thus, there was no treatment for 'the same problem,' as is required by *Miller*. *See id.* at 305.

(8/22/18 Mem. Op. & Order 4.)

Contrary to this ruling, Lupole argues that there was continuing treatment by Dr. Dunne and his associates at the VA, who were acting under his direction to diagnose and treat the same problem caused by his negligence. This "directed" treatment, according to Lupole, continued until February 1, 2012, and thus occurred within two years of the filing of Lupole's administrative claim on January 31, 2014. Assuming this is true—and assuming that Lupole's supporting evidence is the type that could justify reconsideration under Rule 54(b)—Lupole's claim still does not escape the holding of *Miller*. The court explained:

> [N]o such later negligence could have contributed to the specific cause of death upon which this wrongful death claim has throughout been rested: the failure to detect cancer in time to arrest it and thereby altogether avoid death from that cause. While the complaint contains conclusory allegations that could be read to charge the later treatments as contributory causes of death, the only later acts of negligence specifically identified in opposing the summary judgment motion have nothing to do with timely detection or arrest of the cancer which, so far as the record shows,

4

> was inexorably underway when Mrs. Petzak first became aware of
> its existence.

932 F.2d at 305. Just like in *Miller*, the cancer was "inexorably underway" on December 23, 2011, when Mr. Lupole was given a terminal diagnosis of liver cancer. Lupole's continued treatment past that date is therefore not relevant to the accrual of his claim.

In contrast to *Miller*, the "unique set of facts" in *Otto* are entirely distinguishable. 815 F.2d at 988. In *Otto*, the plaintiff alleged negligence in connection with parathyroid surgery. Following an initial surgery, the plaintiff was "given reasonable and credible explanations for the procedure and for the complications that ensued" and was "reassured" that her function would return to normal, but in the event that it didn't, a transplant could be performed to correct any problem and "the risk of permanent hypocalcemia was virtually nonexistent." *Id.* at 989. The first transplant failed, and it was only during the second transplant that plaintiff learned that "she would experience permanent hypocalcemia if this procedure proved unsuccessful." *Id.* Thus, the claim "could not have accrued until after the second transplant when she became aware of the true nature of her permanent and irreparable injury." *Id.* For the reasons stated above, Lupole's medical situation is not comparable, and the continuing treatment doctrine does not apply.[2]

For these reasons, Lupole's motion to reconsider (Dkt. No. 82) is **DENIED**. The Clerk is

---

[2] For similar reasons, the Fourth Circuit's unpublished decision in *Pinilla v. United States*, 760 F. App'x 164 (4th Cir. 2019), is also distinguishable. In *Pinilla*, action was brought on behalf of a minor child who suffered a brachial plexus nerve injury during a head first delivery. Expert testimony indicated that "until one knows that the brachial birth injury is permanent, there is no way to distinguish whether it was caused by the natural forces of labor or by the health care providers' manipulation of the head and neck." 760 F. App'x at 167. The court reversed a grant of summary judgment based on the father's testimony that he knew his son suffered a permanent injury as of a certain date. 760 F. App'x at 169. The court reasoned that "where the full extent of an injury is difficult to determine, mere suspicions by a layperson are insufficient to trigger accrual under the FTCA." *Id.* Instead, as in "previous cases where we have ruled that FTCA claims did not accrue until the plaintiff learned from medical professionals about an injury's true extent, we hold that Erick's parents could not have known that his injury was permanent until they were notified of that fact by a healthcare provider." *Id.* (citing *Otto*, 815 F.2d at 989). Here, Mr. Lupole knew that the injury was permanent when he was given a definitive diagnoses of terminal liver cancer.

directed to transmit copies of this memorandum opinion and order to all counsel of record.

Entered: September 20, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge